## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **KELLIE JOHNSON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:12CV00010 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **SCOTT COUNTY SCHOOL** | ) | By:  James P. Jones |
| **BOARD, ET AL.,** | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*Gerald L. Gray, Gerald Gray Law Firm, Clintwood, Virginia, and Edward G. Stout, Curcio & Stout, PC, Bristol, Virginia, for Plaintiff; W. Bradford Stallard and P. Danielle Stone, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendants.*

In this employment discrimination case, the plaintiff has sued her employer, a local school board, and four members of that board, asserting three separate claims:  sexual harassment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. §§ 2000e to 2000e-17 (West 2012), (Count One); unlawful retaliation under Title VII (Count Two); and violation of her constitutional right to equal protection under the law pursuant to 42 U.S.C.A. § 1983 (West 2012), (Count Three).  Counts One and Two seek relief against the board itself, while Count Three is against certain named board members individually.  The defendants have now moved for summary judgment in their favor on all three counts.  For the

following reasons, I will grant the motion as to Count Three but deny it as to Counts One and Two.

## I. FACTUAL BACKGROUND.

The following facts taken from the summary judgment record are either undisputed or, where disputed, are stated in the light most favorable to the plaintiff.

The plaintiff Kellie Johnson was initially employed by the Scott County, Virginia, School Board (the "Board") as a school counselor but was later promoted to assistant principal and eventually principal of Weber City Elementary School ("Weber City"). On July 28, 2010, Johnson met with Greg Baker, then the Board's attorney, who indicated to Johnson that she would be promoted to assistant superintendent once he was appointed by the Board as the new Scott County school superintendent. She denied interest in the promotion, but on July 31, the retiring superintendent Jim Scott strongly encouraged her to accept it.

Baker's path to appointment was not without its difficulties, however, owing primarily to the fact that he had previously been convicted of soliciting a prostitute and had lied about that conviction on a judicial application, causing the loss of his local judgeship and suspension as a lawyer. Board member Kathy McClelland opposed his appointment, and she cited the aforementioned indiscretions as well as inappropriate behavior toward a woman during his judgeship as the bases for her

opposition, although she gave scant detail to her fellow board members about the incident during his judgeship.  Nonetheless, in September 2010, Baker was hired by the Board in a five-to-one vote.

On November 1, 2010, Johnson was promoted to Director of Personnel and Instruction of the Scott County school system and assigned to the Central Office. On the same day, Baker entered an apprentice position at the Central Office in anticipation of his replacement of Scott as superintendent.   In December 2010, Baker began sending Johnson text messages, "asking [her] to hook him up with a woman, talking about his family and how he was lonely, he didn't have anyone." (Johnson Dep. 32).  Baker sent text messages of this nature on a daily basis, and their content escalated into pleas for assistance in finding a woman like her.

In January 2011, Baker officially became superintendent; he revised the Central Office's organizational structure, and as a result, Johnson, alongside John Ferguson, became one of two assistant superintendents.   At various points in January and February, Baker continued to make inappropriate remarks to Johnson, both in person and by text — that he could not live without Johnson; that he loved her; that he had told his father that he had found the perfect woman; and that, although other school employees were "breaking down his door, dying to sleep with him," he wanted Johnson.  (Johnson Dep. 69).  On February 11, 2011, during the return trip from a conference in Richmond, Baker cried, again telling Johnson

that he loved her and could not live without her.  The next day, he sent her a text telling her that she had left a scarf in his car and that he had slept with it the previous night.  On Valentine's Day, Baker gave Johnson a box of chocolates.

On February 18, 2011, Johnson met with Baker in his office, and with her father listening in from her office, she requested a transfer out of Central Office but hoped to remain in her current position.  Baker responded, "Well, Kellie, you know this is not good for your [sic] professionally.  This would not be a good move for you." (Carter Dep. 16).  On February 21, with her husband listening by cell phone, Johnson met Baker at a restaurant, requesting again to be transferred out of the Central Office.  Despite these entreaties, Baker took no immediate action.  As a result, Johnson avoided working near Baker in the Central Office and spent more time in the various schools fulfilling her duties as assistant superintendent.

On March 3, Baker sent Johnson a series of text messages expressing excitement about a trip to Williamsburg and stating, "Want to take you drinking and dancing and fucking!!!!! 3 things I'm great at." (Johnson Dep. 44-45, Ex. 1).  She responded with "Way inappropriate." (Johnson Dep. 45, Ex. 1).  On March 10, Johnson called Baker one last time requesting a transfer, and when no progress was made, she decided to report Baker's behavior to a Board member.[1]

---

[1] Johnson contends that all of her transfer requests were not requests for a different and lesser position but only requests for a physical transfer out of the Central Office in order to obtain distance from Baker.

She first approached Board chairman James Jessee on March 15.  Jessee, who admitted to her that he had his suspicions, suggested that Johnson speak with Board member McClelland.  She did so later that day, explaining that she was unable to do her job due to Baker's advances.  An apologetic McClelland remarked, "I just knew something like this was going to happen."  (McClelland Dep. 41.)  Johnson's father spoke with Board member Lowell Campbell that same evening and showed him the sexually explicit text messages from Baker.  Campbell spoke with Baker that night, and Baker neither admitted nor denied sending the text messages.

On the following day, Board member McClelland and Chairman Jessee confronted Baker, and he denied the allegations.  In an email sent the same day, Baker reassigned Johnson to Weber City, in a newly-created position as Director of Instruction and Teacher Performance.  However, Jessee instructed Johnson to take a two-week leave.  On March 26, in a telephone conversation with Board member Dennis Templeton, Johnson was told she would be working at Weber City under the supervision of Assistant Superintendent Ferguson.

Johnson reported to Weber City on March 31 to find her new office with "no heating, no air, didn't have a phone line, no office supplies."  (Johnson Dep. 145).  She did not have a key to this office, so she was let in daily by the school custodian.  In a letter dated the same day, Ferguson wrote, "The School Board has

requested that I notify you that your salary will be reduced to $67,565 effective with the 2011-12 contract year."  (Ferguson Dep., Ex. 1).  Her salary at the time was approximately $82,000.  In June 2011, the Board formally demoted Johnson to principal of Weber City for the following contract year.

## II. STANDARD OF REVIEW.

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see* Fed. R. Civ. P. 56(a).  In determining whether the moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party.  *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), *overruled on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).  "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . . ."  *Celotex Corp. v.* Catrett, 477 U.S. 317, 324 (1986).   Applying these standards, the defendants' motion for summary judgment must be granted in part and denied in part.

III. DISCUSSION.

A. Sexual Harassment Claim.

To successfully establish a Title VII claim based on a hostile work environment, the plaintiff must show "that the offending conduct (1) was unwelcome, [2] (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (en banc) (citation omitted). Challenging the plaintiff's satisfaction of the final two factors, the defendants assert that the record does not evince sufficiently severe or pervasive conduct so as to create an actionable harassment claim and further argue that the offending conduct was not imputable to the employer, insofar as an affirmative defense precludes liability as to the defendant Board.

The severity or pervasiveness of the conduct in question is subject to both an objective and subjective component. *Id.* at 333. "The environment must be

---

[2]   The defendants contend, although somewhat indirectly, that Johnson acquiesced in Baker's advances. They allege that Johnson frequently called Baker, sometimes late at night, and sexually propositioned him on occasion; that she took Baker to dinner several times; and that she did not positively rebuff his invitation to a sporting event. They also refer to a late-night email to Baker in which Johnson wrote, "Can't sleep." (Johnson Dep. 213, Ex. 16). Johnson, however, disputes this contention and has provided sufficient evidence to support resolution of that dispute by a jury. She made repeated requests to be transferred out of Central Office, she responded to Baker's lewd text message with "Way inappropriate," and she directly denies Baker's allegations that she welcomed and encouraged his conduct.

perceived by the victim as hostile or abusive, and that perception must be reasonable." *Ziskie v. Mineta*, 547 F.3d 220, 227 (4th Cir. 2008). Objectively, hostile work environments are "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). The court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 23. Additionally, the court must examine "the social context in which particular behavior occurs and is experienced by its target." *Onacle v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). "Severity inquiries . . . have often involved a disparity in power between the harasser and the victim." *Mineta*, 547 F.3d at 227.

The record contains evidence that Baker's conduct was frequent, humiliating, and deleterious to Johnson's work performance. Moreover, the conduct was perpetrated by the most senior executive official in the school system. The defendants counter that courts, in previous cases, have been presented with more egregious conduct than is present here and found it to be insufficiently

severe. However, the Fourth Circuit recently found this approach to be an inappropriate basis for granting a motion for summary judgment:

> On appeal, Freightliner . . . undertakes to defend the district court's summary judgment on the issue of severity/pervasiveness by cataloging some of the myriad cases that have come before this court and that involved behavior considerably more offensive and opprobrious than that shown here. While this tack is understandable, and assuming that other cases involve more heinous behavior in male dominated workplaces than that shown here, we have never held that a weak case is necessarily one that should be disposed of on summary judgment. The question at the summary judgment stage is not whether a jury is *sure* to find a verdict for the plaintiff; the question is whether a reasonable jury could rationally so find.

*Hoyle v. Freightliner, LLC*, 650 F.3d 321, 334 (4th Cir. 2011). Furthermore, the primary decision cited by the defendants in support of this contention emphasizes that the plaintiff did not "allege that [her supervisor] ever requested a sexual act, touched her inappropriately, discussed sexual subjects, showed her obscene materials, told her vulgar jokes, or threatened her. Nor does [the plaintiff] allege that [this] behavior interfered with her ability to perform her job." *Singleton v. Dep't of Corr. Educ.*, 115 F. App'x 119, 122 (4th Cir. 2004) (unpublished). The record in this case, however, is not bereft of such allegations.

Baker sent Johnson a series of lewd text messages containing explicit sexual language and a nearly explicit sexual proposition in anticipation of a trip to Williamsburg. He also previously declared that, while he could easily have sex with other school personnel, it was Johnson that he wanted. These statements,

coupled with his frequent amorous advances, led Johnson to request a transfer out of Central Office on several occasions and finally to notify Board members when she felt it had become too difficult to perform her duties.  Indeed, at that point, she had begun to avoid working from Central Office and rebuffed Baker's requests to meet personally.  As such, I find there is a dispute of material fact as to the severity or pervasiveness of Baker's conduct.

Next, the defendant asserts an affirmative defense so as to preclude the Board's liability on Johnson's sexual harassment claim.  In the context of a hostile work environment, the Supreme Court has succinctly discussed imputation to the employer and the accompanying affirmative defense:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . .  The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. . . .  No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).[3]   A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761.   Moreover, the employment action need not be personally executed by the alleged harasser, because "the harasser may use his or her discriminatory intent to set in motion a tangible employment action taken by someone else." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 332 (4th Cir. 2012).   Indeed, there need only be a showing of "some nexus between the harassment and the tangible employment action for the latter to be actionable." *Id.*

In the present case there is a genuine dispute of material fact as to whether the alleged harassment culminated in a tangible employment action.   On the day after she reported his conduct, Baker reassigned Johnson to Weber City with significantly different responsibilities in her new position, and only two weeks later, the Board notified Johnson that her pay would be significantly reduced in the following contract year.   Therefore, the availability of the affirmative defense cannot be resolved on this motion for summary judgment.

---

[3] Because the defense can be disposed of on the basis of a tangible employment action, I do not discuss in detail the two elements of the affirmative defense.

B. Retaliation Claim.

Section 704(a) of Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice" made unlawful by Title VII. 42 U.S.C.A. § 2000e-3. There are two methods of proof by which a Title VII retaliation claim may be established: (1) by "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue," or if such evidence is lacking, (2) under the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973). *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999) (citation and internal quotation marks omitted), *overruled on other grounds*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

The plaintiff does not provide any direct proof of a discriminatory motivation underlying the employment action and thus must proceed under the *McDonnell Douglas* scheme.[4] Under that method of proof, the plaintiff must first establish a prima facie case of retaliation, and if successful, the burden then shifts

---

[4] There is no indication in the record of conduct or statements that directly indicates a discriminatory motivation for the adverse employment action. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th. Cir. 2006) (citation and internal quotation marks omitted) ("Direct evidence must be evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."); *see also Brinkley*, 180 F.3d at 608 ("To survive summary judgment on the basis of direct and indirect evidence, [the plaintiff] must produce evidence that clearly indicates a discriminatory attitude at the workplace and must illustrate a nexus between that negative attitude and the employment action.")

to the defendants to provide a legitimate, non-retaliatory reason for the employment action. *See Brinkley*, 180 F.3d at 607. Once the employer meets its burden, the plaintiff must provide evidence that the defendant's stated reason is mere pretext for a retaliatory motivation. *Id.* Ultimately, to defeat a motion for summary judgment, the plaintiff need only establish "a prima facie case of discrimination, combined with evidence from which a jury could conclude that an employer's proffered justification was false . . . ." *Burgess v. Bowen*, 466 F. App'x 272, 277 (4th Cir. 2012) (unpublished).

To establish a prima facie case of retaliation under the *McDonnell Douglas* framework, the plaintiff must show: (1) that she engaged in a protected activity; (2) that the employer took adverse employment action against her; and (3) that there existed a causal connection between the protected activity and the adverse action. *See Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 242 (4th Cir. 1997). While it is not disputed that Johnson engaged in a protected activity, nor is it contested that adverse employment action was taken against her, a question exists as to the causal connection between the former and the latter.

The Supreme Court has noted that reliance on mere temporal proximity as sufficient evidence of causation requires that such proximity be "very close." *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citation and internal quotation marks omitted). The defendants focus on her reassignment the following

school year, but the plaintiff has produced evidence showing that an adverse employment action occurred almost immediately. The day after she complained of Baker's conduct to several Board members, Baker reassigned her to a new position in a new location. The Board acquiesced in this assignment and, in turn, notified her of a significant reduction in pay only two weeks later. While her reassignment for the following school year did not occur for several months, the salary reduction and her relocation were both sustained upon final action by the Board. This evidence is sufficient for the plaintiff to carry her initial burden of establishing a prima facie case.

The defendants allege, as their legitimate, non-retaliatory reason, that the Board was committed to "unwinding" the staffing changes made by Baker during his tenure as superintendent. However, whether that reason suffices to meet the plaintiff's prima facie case cannot be resolved at this point in the case. There is minimal evidence in the record to deduce the accuracy of that contention, and the plaintiff's co-assistant superintendent was indeed promoted in the midst of the "unwinding" procedure. Moreover, the plaintiff has proffered sufficient evidence that the stated reason may be pretextual. The notification of a salary reduction only two weeks after her complaints indicates that the Board acquiesced in Baker's initial reassignment and that her demotion was imminent prior to the development of any plan to undo Baker's organizational changes. Insofar as the defendants'

-14-

stated reason is insufficient at the summary judgment stage, the retaliation claim must be left to the jury.

## C. Equal Protection Claim.

The equal protection claim can be dealt with summarily. The plaintiff claims the individual Board members violated her right to equal protection by hiring Baker with the knowledge that he had a propensity to engage in sexually-harassing behavior toward women. However, the standard for establishing such a violation is demanding:

> To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

*Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). There is simply no evidence in the record to support a finding that any of the individual board members voted to hire Baker with the intent or purpose of discriminating against Johnson or other female employees. As such, summary judgment is appropriate on this claim.

## IV. CONCLUSION.

For the reasons stated herein, it is **ORDERED** as follows:

-15-

1.      The Motion for Summary Judgment (ECF No. 59) is GRANTED IN PART AND DENIED IN PART; and

2.      The Motion for Summary Judgment is DENIED as to the plaintiff's sexual harassment claim (Count One) and retaliation claim (Count Two) and GRANTED as to the plaintiff's equal protection claim (Count Three).  The individual Board members are dismissed as parties.

ENTER:  October 28, 2013

/s/  James P. Jones
United States District Judge